UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
UNITED STATES OF AMERICA,　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　-against-　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　:　　**MEMORANDUM AND ORDER**
KYHEIM BETHEA,　　　　　　　　　　　　　　　　:　　15-cr-417 (DLI)
　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　Defendant.　　　　　　:
-------------------------------------------------------------------x
**DORA L. IRIZARRY, United States District Judge:**

On November 13, 2015, the defendant filed a motion to suppress statements and tangible evidence ("Def. Mot. Sup.," Dkt. Entry No. 9), along with the defendant's affidavit in support thereof ("Def. Aff.," Dkt. Entry No. 9-1). On November 30, 2015, the government filed its opposition ("Gov't Opp.," Dkt. Entry No. 10). The defendant's reply was due by December 7, 2015; however, to date, the defendant has not submitted a reply. *See* Minute Entry, dated October 13, 2015; *see also* Docket. For the reasons set forth below, those portions of the defendant's motion that seek suppression of the tangible evidence are denied, as the defendant has not established an expectation of privacy in the places searched or the items seized. The defendant may correct these standing deficiencies by submitting a supplemental affidavit by no later than January 4, 2015. However, the defendant is cautioned that the statements contained in any affidavit submitted by him are made under penalty of perjury, for which he may be subject to prosecution separately from this case.

## BACKGROUND

The defendant is charged with a single count of being a felon in possession of a firearm. Indictment, Dkt. Entry No. 3. Unless otherwise indicated, the following facts are taken from the government's opposition.

On June 27, 2015, at approximately 1:15 a.m., New York City Police Department

("NYPD") Officers Mark Xylas and Ryan Galvin and NYPD Sergeant Erek Powers observed an 2005 Audi TT (the "Vehicle") erratically speeding through the Bedford-Stuvyesant section of Brooklyn, New York. Gov't Opp. at 2. The officers pulled over the Vehicle and approached, with Officer Xylas on the driver's side, Officer Galvin on the passenger side, and Sergeant Powers by the rear bumper. *Id.* The officers observed that the Vehicle was a two-seater convertible with its top down. *Id.* The defendant was in the driver's seat, and the sole passenger seat was empty. *Id.*

After requesting the defendant's driver's license, registration, and proof of insurance, Officer Xylas asked the defendant a number of questions to which the defendant responded. *Id.* at 2-3. Officer Xylas observed that the defendant's speech was slurred, his eyes were bloodshot, and his breath smelled of alcohol. *Id.* at 2. Officer Xylas asked the defendant if he had consumed any alcohol recently, and the defendant stated that he had drank a few sips. *Id.*

Officer Xylas asked the defendant to step out of the vehicle, and the defendant complied. *Id.* at 3. As the defendant exited the Vehicle, Officer Xylas noted that the defendant was unstable in a standing position. *Id.* Officer Xylas then moved to the passenger side of the Vehicle, where he observed a plastic container inside an open backpack on the passenger side floorboard. *Id.* From outside the Vehicle, Officer Xylas could see what appeared to be marijuana inside the plastic container.[1] *Id.* At approximately the same time Officer Xylas was making this discovery, the defendant asked why the officers were searching his Vehicle and told them not to search his Vehicle. *Id.*

The officers arrested the defendant for: (1) operating a motor vehicle under the influence of alcohol or drugs in violation of New York Vehicle Traffic Law ("VTL") § 1192; (2) reckless driving, in violation of VTL § 1212; and (3) possession of marijuana in violation of New York

---

[1] Subsequent testing confirmed that the substance inside the container was marijuana.

Penal Law ("NYPL") § 221.05. *Id.* at 4. Upon being handcuffed, the defendant went limp and otherwise resisted the officers' attempts to place him in the police vehicle. *Id.* For this, the officers also charged the defendant with resisting arrest under NYPL § 205.30. *Id.*

Officers Xylas and Galvin drove the defendant to the 81st precinct station where Officer Galvin began processing the defendant. *Id.* Sergeant Powers drove the Vehicle to the 81st precinct's secure parking lot. *Id.* Officer Xylas conducted an inventory search of the Vehicle pursuant to NYPD procedures. *Id.* As part of the inventory search, Officer Xylas searched the Vehicle's trunk, where he found a messenger bag containing a .380 caliber Bersa pistol and seven rounds of ammunition. *Id.* at 5. The messenger bag also held the defendant's resume, several letters addressed to the defendant, and documents related to traffic citations issued to the defendant. *Id.*

Following the inventory search, Officers Xylas and Galvin transported the defendant to the 78th precinct station for sobriety testing. *Id.* at 6. During the 10-15 minute trip from the 81st precinct station to the 78th precinct station, the defendant told the officers that he was a probation officer who worked specifically with 16-24 year old males. *Id.* Officer Xylas asked whether the defendant's duties as a probation officer involved carrying a firearm. *Id.* The defendant responded that they did, but that his firearm was "far away." *Id.* Officer Xylas also asked why the defendant possessed marijuana if he was a probation officer, and the defendant replied that he never failed a drug test because he "smokes light." *Id.*

At the 78th precinct station, Officer Galvin checked the defendant's criminal history and discovered that the defendant was on parole for second degree murder. *Id.* At 3:40 a.m., approximately two hours and twenty-five minutes after the officers stopped the defendant, a breathalyzer examination was performed on the defendant. *Id.* at 7. The defendant's blood alcohol

content at that time was .075 %. *Id.* Officer Xylas then informed the defendant of his *Miranda* rights, which the defendant invoked. *Id.* Accordingly, the officers did not attempt to question the defendant. *Id.*

Officers Xylas and Gavin then transported the defendant back to the 81st precinct station. *Id.* During the course of this car ride, the defendant asked the officers for help, and asked whether he could be released that evening. *Id.* In response, the officers told the defendant that the officers' supervisors would decide whether the defendant could be released, and that such a decision would depend on the defendant's criminal history. *Id.* The defendant replied that he was on parole for a murder that occurred during a robbery. *Id.*

After returning to the 81st precinct station, the defendant commented to Officer Xylas that he knew something was amiss, because it was taking longer than usual to receive a "desk appearance ticket."[2] *Id.* At this point, Officer Xylas informed the defendant about the pistol he found in the Vehicle, to which the defendant replied: "why do you have to do me like that?" *Id.*

In his motion to suppress, the defendant provides a different, and less detailed, version of these events. According to the defendant, at the time the officers pulled him over he was not engaging in any illegal activity or nor was he committing any traffic violations. Def. Mot. Supp. at 1. Moreover, the defendant claims that after he got out of the Vehicle, the officers began to "search" his car, without the defendant's consent. *Id.* at 2. The defendant does not elaborate on how, precisely, the officers conducted this "search." *Id.* With respect to the defendant's statements, the defendant merely claims that after the officers took him to the station, the officers questioned him without reading him his *Miranda* rights, and the defendant responded to those

---

[2] A "desk appearance ticket" or DAT is an order to appear in New York City Criminal Court for arraignment, and is often issued to individuals charged with minor crimes to avoid detaining the prior to arraignment.

4

questions. *Id.*

The defendant's affidavit differs from his motion papers in several critical respects. First, in the affidavit, the defendant claims that at the time he was pulled over, he "was not engaged in any criminal activity," Def. Aff. at 1, whereas in the motion, he states that "he was not engaged in any criminal activity *or committing any traffic violations*." Def. Mot. Sup. at 1 (emphasis added). Similarly, in the motion, the defendant states that he had "a reasonable expectation of privacy in [the] computer bag located in the trunk of the [Vehicle]," Def. Sup. Mot. at 4, but in the affidavit, he merely claims that the officers recovered "various personal affects, . . . marijuana, and a weapon from the [Vehicle]." Def. Aff at 2. In neither the motion, nor the affidavit, does the defendant claim an expectation of privacy in the Vehicle, beyond merely asserting that he was driving it. *See generally*, Def. Mot. Sup. and Def Aff. Furthermore, at no point in either the motion or the affidavit does the defendant claim a possessory interest in the pistol, or the backpack recovered from the front passenger seat. *See generally Id.*

According to the government, the Vehicle is not registered with the defendant, but instead, is registered with an individual residing in North Carolina. Gov't Opp. at 8. The defendant has neither challenged this assertion, nor has he claimed that he had permission from the owner to operate the Vehicle.

## **DISCUSSION**

"It has long been the rule that a defendant can urge the suppression of evidence obtained in violation of the Fourth Amendment only if that defendant demonstrates that his Fourth Amendment rights were violated by the challenged search or seizure." *United States v. Padilla*, 508 U.S. 77, 81 (1993) (citing *Alderman v. United States.*, 394 U.S. 165, 171–172 (1969) (additional citations omitted)). With respect to the search of a vehicle, a "defendant must show,

5

among other things, a legitimate basis for being in [the vehicle], such as permission from the owner." *United States v. Ponce*, 947 F.2d 646, 649 (2d Cir. 1991) (citing *United States v. Ochs*, 595 F.2d 1247, 1253 (2d Cir. 1979)); *Id.* (citing *United States v. Smith,* 621 F.2d 483, 487 (2d Cir.1980) ("Defendants who do not have a legitimate basis for being in a car that is not registered in the name of any of the car's occupants cannot object to the search of the vehicle.")). Similarly, defendants must establish a legitimate expectation of privacy in items seized from cars in order to suppress the use of those items at trial. *Rakas v. Illinois*, 439 U.S. 128, 148 (1978) (finding that the defendants lacked standing because "[t]hey asserted neither a property nor a possessory interest in the automobile, *nor an interest in the property seized.*") (emphasis added); *Smith*, 621 F.2d at 488 (same).

Here, the defendant merely asserts that he was driving the Vehicle at the time of the traffic stop, but he does not claim to be its registered owner or an authorized driver. Under the relevant case law, this is insufficient to establish that the defendant had a legitimate expectation of privacy in the Vehicle. Similarly, although the defendant's motion asserts a possessory interest in the computer bag from which the police recovered the gun, his affidavit simply declares that the officers recovered "various personal effects." To establish standing, the defendant himself, as opposed to his attorney, must unequivocally assert a possessory interest in the computer bag. *See United States v. Ulbricht*, 2014 WL 5090039, at *6 (S.D.N.Y. Oct. 10, 2014) (finding that a defendant's expectation of privacy must "be established by a declaration or other affirmative statement of the person seeking to vindicate his or her personal Fourth Amendment interest in the thing or place searched."). Of course, because neither the motion nor the affidavit assert a possessory interest in the bag recovered from the front passenger seat, or in the gun itself, the defendant lacks standing to challenge the seizure of either.

On the other hand, the defendant does have standing to suppress the statements he made following the traffic stop on the grounds that either: (i) the police lacked probable cause for the initial stop; or (ii) the statements were obtained in violation of the defendant's *Miranda* rights. Therefore, the defendant is entitled to an evidentiary hearing on issues relating to the statements he made following the traffic stop, *i.e.* probable cause for the stop and *Miranda*. However, he is not entitled to an evidentiary hearing on whether the tangible evidence should be suppressed, unless he submits a supplemental affidavit in which he alleges facts sufficient to establish the threshold privacy expectation.

## **CONCLUSION**

The evidentiary hearing currently scheduled for January 7, 2016 at 11:30 a.m. will proceed, but only for the purposes of determining whether the defendant's statements should be suppressed. If the defendant also wishes to suppress the tangible evidence at the evidentiary hearing, he must submit a supplemental affidavit, by no later than January 4, 2016, in which he establishes facts demonstrating an expectation of privacy in the Vehicle and the items seized.

SO ORDERED

Dated: Brooklyn, New York  
      December 23, 2015

/s/  
Dora L. Irizarry  
United States District Judge